[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown. He also sought custody and support of the parties' minor child, and other relief, as on file. The defendant wife admitted in her answer that the marriage was irretrievably broken down. In her cross complaint, she sought a dissolution on that ground. She also sought custody and support of the couple's minor child, alimony, and other relief, as on file.
At the trial, the parties and the child were represented by counsel. Each spouse testified and submitted financial affidavits and written proposed orders. A number of documentary materials, including photographs, were introduced into evidence. A child support and arrearage guidelines CT Page 3406 worksheet was also submitted. All counsel waived oral argument and the filing of briefs.
From the evidence, I find as follows.
The wife, whose birth name was Kerry A. Gross, married the husband at Westerly, Rhode Island, December 31, 1980. She has resided in this state continuously for at least one year before the filing date of the complaint. There is one minor child issue of the marriage, Casey Philip Cosker, born September 9, 1987. No other children were born to the wife since the date of the marriage. Neither party or the child has been a recipient of public assistance, all statutory stays have expired, and the court has jurisdiction.
The wife is 40 years of age, in good health, and a college graduate with a master's degree in social work. She has been employed throughout the marriage (except for maternity leave) at times as an investigator and now as a social worker by the state, a period totalling about 17 years. She now earns $746 per week gross, $557 per week net. She has health insurance available through her employment.
The husband is 51 years of age and in good health. He is a high school graduate, with a substantial number of college credits in civil engineering and music, although he never received a degree. He operates his own construction and home removal business, which is incorporated under `Subchapter S.' He is currently licensed in Connecticut as a home improvement contractor. He earns $423 per week (stated as both gross and net on his financial affidavit) from that employment. In addition, he manages the parties' jointly owned five-unit apartment building and claims a net weekly loss of $26 therefrom. He resides in one of the dwelling units, and as the fair market rental for these units is $400-$450 per month, he has additional imputed income of between $92-$104 per week.
The parties separated in the spring of 1994, and the husband left the marital dwelling, in which he had maintained his business office. The wife claimed that the destruction of the marriage was in large part caused by the husband's physical violence to her. She described him as often very angry, that his behavior influenced that of their young son, and that the husband `needed to exercise' control over her. CT Page 3407
The husband also had a tendency to begin construction projects involving the home which he did not complete, leaving the home in disarray and disrepair and in an unsafe condition. He also did not manage his business finances well, thereby negatively affecting and impairing the parties' resources. This was also a major factor in the marital breakdown.
The husband, on the other hand, charges his wife with often drinking alcohol to excess, and having a drinking problem which contributed to the breakdown. He also claims that the downturn in his business fortunes in 1994 and 1995 (in 1993, his business grossed more than $321,000, yet reported an operating loss of $32,911) were largely caused by his wife's denying him access to his office and records and interfering with customers' telephone calls.
It is abundantly clear that the marriage has broken down irretrievably, and I find after considering the credibility of the parties, including their conduct, demeanor and attitude, that a larger share of the fault for the destruction of the marriage must be placed on the husband's shoulders.
In the less than two years which have elapsed since the return date, a great number of pleadings and other papers have been filed in this case, including six motions for contempt, all by the wife, and three motions for sanctions, all by the husband. The husband was found in contempt for failure to comply with child support and other orders, and incarcerated once, briefly.
The husband reports the following assets on his financial affidavit. The five-unit apartment building, jointly owned, 24 Spring street, Westerly, Rhode Island, which he values at $173,150, less mortgage of $136,350, leaving equity of $36,800. The wife values it at $190,000. I find it has a value of $185,000, and that it was owned by the husband prior to the marriage. I also find that the wife managed the premises for a substantial period of time, including rental collection, painting and cleaning, arranging for repairs, entering into leases, etc.
The husband also reports the jointly owned family dwelling at 280 Fitchville Road, Bozrah, Connecticut, to have a value of $115,000; the wife $80,000. I find it has a value of $100,000, less mortgages and liens of about $86,000, leaving a CT Page 3408 net equity of $14,000.
The husband also reports the following: a 1989 Chevrolet valued at $10,500, less loan of $7,500, leaving equity of $3,000; a piano and other tangible personal property with a value of $5,000; a $250,000 Phoenix life insurance policy with no cash value; and his business equipment, which he values at $88,000. He places no value on his corporate shares or the good will of his business.
In addition to the jointly owned real estate, the wife reports a 1993 Subaru automobile worth $9,000 with no equity; a credit union account of $500; miscellaneous household furniture and furnishings of $2,000; and a retirement account of $3,976. There is also a $2,000 receivable from the child's school not shown on either spouse's affidavit.
Against these assets, the parties report the following liabilities. The husband, $44,805, which includes past due real estate taxes and sewer and water charges on the Rhode Island property; $12,100 in federal income taxes; $1,680 in Connecticut state taxes; and $5,500 due the Town of Bozrah in personal property taxes, and a child support arrearage of $1,350 due the wife. The wife reports $23,193 in debts, excluding the home mortgage.
The following additional findings are made. The second mortgage on the family dwelling, which has a present principal balance of approximately $37,437, was principally transacted to provide funds for the husband's business. The second mortgage is now three months past due, in the amount of $929.64, and the husband is in violation of a court order to keep it current.
The two judgment liens on the husband's interest in the jointly owned premises, which in the aggregate, total $12,500 plus interest thereon, are debts solely incurred by the husband, as a result of his business activities. Even if, as the husband contends, the lien for concrete was actually for concrete delivered and poured on the dwelling site, there was no credible evidence that such materials and work enhanced the value of the premises.
On the totality of the evidence, I find that the husband's assertion that the wife's actions caused his business CT Page 3409 losses not proven, and that his business problems are primarily a result of his own financial doings, and general economic conditions.
There is an arrearage due the wife on account of child support and medical bills of $1,936.
The husband is in arrears of two monthly payments due on the Westerly mortgage in the amount of $2,636.
The parties successfully completed the parenting education program. See General statutes § 46b-69b.
Commendably, with the assistance of counsel for the child, the parties entered into a written parenting plan for their child, entitled `Custody and visitation Agreement' (Agreement). It is comprehensive and extensive, and essentially provides for the parties to share joint legal custody of their son, with primary physical residence and decision making with mother.
I find this Agreement to be in the child's best interest, and accept and approve it. It shall become part of the file.
Counsel fees in the amount of $1,000 sought by the child's attorney are fair and reasonable and were reasonably incurred to represent the child's best interests.
The father's child support obligation called for by the Child Support and Arrearage Guidelines (eff. June 1, 1994), is $96 per week, which when adjusted for his additional' in kind' or imputed income, is $105 per week.
The parties have equal employability. They each have significant occupational skills and earning capacity and comparable opportunities to acquire capital assets and income in the future. The wife spent substantial sums in repairing the marital premises. The court cannot, on the evidence provided, determine quantitatively the parties' relative monetary contributions to the marital assets. However, it is clear that the husband's financial mismanagement, despite his notable engineering and construction skills, have substantially and adversely affected the parties' financial condition and rendered it precarious. CT Page 3410
The state of the evidence is such that I cannot determine the relative nonmonetary contributions of the parties.
The existence of the second mortgage and the judgment liens on the marital dwelling requires that they be paid so that the wife can maintain a home for herself and the parties' minor child. In order to pay said encumbrances and maintain the home, the wife is in need of additional support from the husband.
The court has considered all of the factors in General statutes §§ 46b-81, 46b-82, 46b-84 and the child support and arrearage guidelines in light of the evidence and its findings in the determination of the awards set forth below. I have also considered the taxable implications and consequences of said awards.
Accordingly, judgment may enter dissolving the parties' marriage on the ground of irretrievable breakdown, and it is ordered as follows:
(1) Joint legal custody of the parties' minor child, Casey, is granted to the parties, primary residence and physical custody with the mother. The Agreement dated April 3, 1996, is accepted, approved and incorporated into this decree by reference, and orders shall enter pursuant thereto.
(2) The husband shall pay to the wife the sum of $105 per week as child support, to be secured by contingent wage garnishment.
(3) The wife shall claim the child as a dependency exemption for income tax purposes in 1995 and subsequent odd numbered years. The husband may claim the child in 1996 and subsequent even-numbered years only if he is current in his child support obligation as of the end of each such tax year.
(4) The husband shall maintain and irrevocably designate the minor child as beneficiary to the extent of $100,000 of the proceeds of his Phoenix Life Insurance Company policy, so long as he is obligated to pay child support hereunder. He shall also irrevocably designate the wife as beneficiary of $100,000 of the proceeds of said policy and maintain said policy so long as he is obligated to her for any of the other financial awards herein set forth. He shall CT Page 3411 execute and deliver to her an authorization so that she may determine the status and good standing of said policy. The wife; shall maintain and irrevocably designate the minor child as beneficiary of her job-related life insurance policy and deliver an authorization to the husband as above.
(5) The wife shall maintain the minor child as a covered dependent under her job-related health insurance policy; the parties shall equally share any unreimbursed or uncovered health-related expenses for said child. An order shall enter pursuant to Section 46b-84(d).
The wife shall cooperate with husband's claim for continued coverage under said health insurance policy, pursuant to applicable state law and federal law, at his sole expense.
(6) There is assigned to the wife the following real and personal property: the real estate known as 280 Fitchville Road, Bozrah, Connecticut, subject to the two mortgages and two judgment liens thereon, which she shall pay and save the husband harmless therefrom; her 1993 Subaru automobile, subject to the loan thereon, which she shall also pay and save the husband harmless therefrom; her credit union account of $500; her retirement plan, and all of the tangible personalty located at the Bozrah premises, except as stated below.
(7) There is assigned to the husband the following real and personal property, the real estate known as No. 24 Spring street, Westerly, Rhode Island, subject to the mortgage, taxes and other encumbrances thereon, including any tenants' security deposits, which he shall pay and indemnify and save the wife harmless therefrom; his 1989 Chevrolet automobile, subject to the loan thereon, which he shall pay and indemnify and save the wife harmless therefrom, and the tangible personal property located at the Westerly premises; all of the issued and outstanding stock of his corporation Cosker Design 
Construction, Inc., and the fixtures and equipment owned and in the possession of said corporation. The wife shall execute and deliver releases of any interests and resignation of any positions held by her therein. The husband shall indemnify her and save her harmless from any claims resulting from her association with said corporation.
(8) The husband shall execute and deliver to the wife a promissory note secured by mortgage on the Westerly premises, CT Page 3412 in the amount of $52,000, with interest at the rate of 6 percent per annum, due and payable in equal monthly installments of $450 per month, commencing May 1, 1996, and the first of each month thereafter, with a balloon payment of any outstanding principal and accrued interest therein, if any, due and payable April 1, 2001. The monthly payments shall increase to $550 per month commencing May 1, 1997, and monthly thereafter. Said note and mortgage shall provide for default if any payment is not made within ten (10) days of its due date, for attorney' s fees and acceleration in the event of default, sale or transfer of the premises, or death of the husband, that interest shall accrue at the rate of twelve (12%) percent per annum in the event of default, and that any default in the payment of the prior mortgage or real estate taxes due on the mortgaged premises shall be deemed a default of the wife's note and mortgage. The sums currently past due for mortgage payments and real estate taxes shall not be deemed a default; however, in the event a foreclosure or similar proceeding is commenced against the Westerly premises, and continues for more than sixty (60) days, the wife shall have the option to declare the mortgage in default, and the unpaid balance and accrued interest immediately due and payable.
Said note shall also be secured by a conditional assignment of rentals, which shall provide that in the event of any default, the wife may collect the rental income and apply it to the first mortgage and taxes due, and then to her mortgage; it shall also prohibit anticipation of any rentals and require approval by the wife in writing for any leases of more than one year. The mortgage note and deed and conditional assignment of rentals shall contain provisions typically prevalent in mortgages on multi-family dwellings used by commercial lending institutions in Westerly, Rhode Island, and the wife shall be named as a mortgagee-loss payee on the fire and casualty insurance on said premises.
(9) The receivable from the school in the approximate amount of $2,000 plus interest thereon, if any, shall be divided equally between the parties.
(10) The husband shall pay to the wife the sum of $1,936 per year alimony, which may be modifiable by her in the event he fails to pay the note and mortgage described in paragraph 8 in full, or fails to indemnify and save the wife harmless from any corporate or business liabilities. As said note and mortgage CT Page 3413 and indemnification are in the nature of support and maintenance for the wife, this alimony order is also found to be actually for such support and maintenance, and said orders shall not be affected by any discharge in bankruptcy. Said alimony shall terminate upon the death of either party.
(11) The husband shall pay the arrearages of $1,936 and $929.64 to the wife within sixty (60) days hereof.
(12) The piano, siding pieces and jacking posts in the wife's possession shall be turned over to the husband within seventy-five (75) days hereof; provided, however, if said payments described in paragraph 11 are not made by the husband as ordered, then the wife may sell the above items and apply the proceeds of said sales to the arrearage. If there is a surplus, she shall turn the same over to the husband, within thirty (30) days; if a shortfall, then the husband shall pay the Sum at the rate of $100 per month until paid. She shall also provide him with an accounting.
(13) Each spouse shall pay the sum of $500 to the child's attorney within sixty (60) days.
(14) Each spouse shall pay his or her own attorney's fees.
(15) Except as above ordered, each spouse shall pay the debts shown on their respective financial affidavits.
(16) All documents and instruments of title necessary or incidental to the effectuation of the orders herein shall be completed and exchanged within thirty (30) days hereof.
Teller, J.